I'm Victor Sherman, the attorney for the appellant. In this matter, Your Honor, the defendant was arrested in April of 2002. At the time that he was arrested, the government had observed him involved in alleged credit card fraud. And during the plea negotiations, the parties agreed that the maximum amount of fraud involved in the case was less than $50,000. The defendant was actually only seen in transactions involving around $3,200, but there were some credit card numbers on his computer, etc. So it was agreed that the maximum enhancement was either four or six levels. At the time, the government threatened the defendant and his daughter with potentially charging them with aggravated identity theft, which was a two-year consecutive sentence. So during the plea negotiations, the government said, well, if you pay us X number of dollars, we won't file the aggravated identity theft. So reluctantly, in order to protect the defendant, but primarily to protect his daughter, he agreed to pay $750,000, even though there was not a penny of that $750,000 that was traceable to any illegal activity. The defendant initially paid from bank accounts $450,000 and agreed to pay the other $300,000, he and his daughter, over a period of time. Approximately a year and a half later. I think you're hitting, we don't have much time and I have a number of questions for you. I think the argument you're leading up to is that the government shouldn't have taken the money for the forfeiture when they were going to charge him a second time based on his reviolation. Is that where you're heading? I am heading in that direction. Okay. I guess, what's your best authority for that? I don't, I didn't see any case law. It appears that, you know, the government found out that your client had re-offended the exact same conduct that he was committing, that he had committed previously and he'd entered a plea of guilty to. And it looks from the record that they were, there's not really an explanation, but I imagine that that investigation was ongoing. He was continuing with his obligation under the plea agreement to make his payments regarding forfeiture or restitution, wasn't it? Yes. Well, it was forfeiture. It was a fiction-grade criminal forfeiture. Your Honor. So what's the authority? Okay. The, first of all, the other argument that I wanted to be, and I want to be sure there's enough time, is that after this breach they went back and decided to take the amount of numbers on the computer that was found at the time of his original arrest and then multiply that figure by $500, even though there was no showing that any of those numbers had ever been used, were intended to be used, and they were all deleted. So the stronger argument, the better argument that I want to make is regarding that $500. Well, we should go. Either one of them. Okay. Let me answer your question. The point of the matter is regarding that is the fact that when the defendant reoffended, the government knew that they were going to declare a breach. The defendant at that time owed about $150,000 on this forfeiture. The government then waited until he had paid almost that entire $150,000 and then declared a breach after 16 months. During that period of time they continually sent letters to me saying pay this money, pay this money, pay this money, knowing that they never intended to carry out the plea agreement between the defendant and the government. So they were using that. Well, his plea still stands. The only thing is the government questions whether or not their obligations under the plea of limiting their request for enhancement would still stand. Okay. Under the plea agreement, his part of the plea agreement was that he couldn't withdraw from the plea. But as far as an obligation to pay the funds, the government, in essence, took that money knowing that they never intended to comply with their end of the bargain. So in getting the additional $150,000 from the defendant over this period of time clearly was a bad faith attempt by the government to make the defendant believe that the government was going to continue to abide by the plea agreement so they could get the money. And once the money, they got in, then they decided to declare a breach of the agreement. Why is that bad faith? I don't understand. Why isn't it just? Why is it bad faith? Okay. Well, if you enter into a contract with somebody and part of the contract is that your side will do something and the other side will do something, and you know that you never intend to do your side of the bargain, but you want the other side to continue doing their side of the bargain until they have completed all of their obligations and at the end of that contract you say, oh, by the way, a year and a half ago you breached the agreement. I let you believe that we were going to continue our side of the bargain, and now you've paid all this money and at the end of it, now that I've got what I wanted out of the agreement, I'm going to call the agreement null and void. Any contract law under those circumstances would be bad faith on the part of the person that is allowing the other party to believe that they were going to carry out their part of the obligation. Even if the terms of the contract itself, the contract itself says that the government has the right to do that. Okay, but they're not telling you that they're going to declare a breach. But the contract doesn't require the government to tell you what they're going to do. But the contract is saying if you do this, we're going to do that. Was this a stipulated plea or was just a regular plea? It was just a regular plea. Okay. So there was no stipulation. It was not a stipulated plea. I don't know what you mean by a stipulated plea. Well, that everybody had if the stipulated plea normally, at least in my understanding, means that if the parties entered into an agreement, only if certain things were made, if anybody breached prior to actually being sentenced, the district court could then reevaluate at that time. But it looks like this was just a regular plea. It was just a regular plea agreement. There was no, basically the government started out by, the right word is extorting the defendant. The government said to the defendant, if you pay X dollars, which has no connection between you and any criminal behavior, we're not going to file additional criminal charges against you. So they were having a hammer over the defendant's head and said, if you pay $750,000, we're not going to charge you with criminal conduct. Okay. But the plea was entered into. Yeah, the plea was entered into. There was no question about it. Maybe I'm missing something here, Mr. Sherman, but didn't he breach it first? There's no question that the defendant breached the agreement by committing a new offense. But once he breached the agreement, the government did not declare a breach at that time. They never even told him that they were going to declare a breach. They let him believe over the next 16 months, continue to pay your money. You do your obligations. And we're not going to tell you, by the way, that we're not going to carry out our side of the bargain. We just want this money from you. But you don't have any evidence. You don't have any evidence of that, that it was bad faith on part of the government. It sounds like you're speculating with respect to that. We don't have any evidence before us that that was the case. Sure. In the record, Your Honor, at the time of the defendant's breach, the government conducted surveillance for like a couple of weeks and did nothing for 16 months. And the only argument that the government makes in its brief is, well, they had other administrative duties and they didn't have time to go after the defendant. But why would they have to do it the next day? I don't understand that. I don't know. I'm not saying they have to do it the next day. But they led the defendant to believe, by continue to make these payments, that they were going to give him some credit for that. So they got over $150,000. That was part of the credit that he was supposed to get for paying the money. I want to move on because I think you have bigger fish to fry here. Okay. So let me go on to the other thing. Well, you don't have much time, but let me ask you. So on the 2015 charge and the judgment of conviction, that's not before us. It isn't. So I'm not quite sure what we're supposed to do about it. I'm not asking you to do anything about that. I'm asking you only to do with the sentence on the original case, which was four years. Now, that sentence was enhanced because after the breach, the government then went back and said, well, there's these 1,287 deleted numbers in a computer, and now we're going to multiply that by $500, and we're going to enhance your sentence by 80 levels. That's the access device enhancement. First of all, the government concedes in the brief that these numbers were never used and they were never connected with any person. They were put into the computer by somebody in the years 2009 and 2010. But the district court judge made a determination. It sounds like there was enough circumstantial evidence, along with Agent O'Rourke's declaration talking about who had specialized training in credit card fraud and counterfeiting and identity fraud. His testimony regarding where those numbers were found, you know. Your Honor, the government, the judge did not rely on O'Rourke's declaration at all. The probation report was prepared before O'Rourke's declaration. The government was using O'Rourke's declaration to try to get a fine of $2.2 million and to say that the defendant had been involved in daily violations for like nine years. The government, the judge did not accept the government's sentencing memorandum on that point and only went on the probation report. The only thing the probation report did. It's in the record. O'Rourke's declaration is in the record. The judge specifically found on the record. Why don't you show me that site where she only limited it to the pre-sentence report. You can tell me on your rebuttal. I'll give you a minute. Okay. Thank you. Good morning, Your Honors. Michael Anthony Brown for the United States. Judge McGee, I want to start with your question about whether there was an explanation for the delay in declaring the breach in this case. And I would point the court to the government's excerpt of the record 106, which is the affidavit that was filed in support of a complaint for the 2015 case. That affidavit clearly details all the government's investigation that occurred from the time of the surveillance in December 2013 through October 2014. And that affidavit shows that the government conducted the surveillance of the defendant, subpoenaed records for the transactions at the ATMs that were at those 7-Elevens, received the subpoenaed records in January of 2014. After reviewing the subpoenaed records, contacted the banks that had provided the account numbers that the defendant used, and it wasn't until February 2014 when bank fraud investigators from the banks confirmed that those were fraudulent transactions. Are you conceding that you have to show a good reason for the delay? I'm not. I'm just providing that for the court because it appeared to me that there was a question about whether there was sufficient record in the or whether there was evidence in the record. So your explanation is there was ongoing investigation.  To the extent that you need to provide an explanation. I'm not conceding that we need to provide one, but there is a good one. Okay. Because the defendant has alleged good faith or bad faith on the part of the government, I want to show that there was actually something the government was doing during this time. Let's ask, because I asked your colleague across the aisle here regarding whether the district court made an explicit finding regarding the access devices, the 1,287 access device numbers. Did the court make an explicit finding that Mr. DeBasida had intended to use those devices found on the computer at his home? I believe so. Where at in the record is that? That would be in the sentencing transcript, Your Honor. Yes. Where at? Even if the judge didn't explicitly make that finding, she applied the enhancement in the case, which implies that she made the finding. The finding was based on substantial evidence. And so I guess talk to me why you think there was sufficient evidence of intent to use those access device numbers, because that seems to be the greatest enhancement in this case. That's what bumped up his numbers. Do you agree? Yeah. I'm going to detail a lot of facts here because they were a lot before the court. The first thing I want to point out is that the complaint in the 2015 case at GER 110, that's the government's excerpt of record, clearly states that the 1,287 access devices that were found in the deleted space of the defendant's computer back in 2012 were credit, debit, and gas cards. Those are access devices. There can't be any dispute about that. The O'Rourke Declaration also said that they were access devices in the government's sentencing memorandum. The government proffered that these were access devices, that the Secret Service had verified them through the website called Bank Identification Numbers, which verifies that they are actual credit card and debit card numbers that are issued by a bank. And I point this out just to note that even at sentencing, it appeared that the defendant had conceded that at least some of the cards were credit card numbers, and that was the excerpts of record for the defendant on page 34. Now, the numbers that were found in the deleted space of the defendant's computer were, according to the O'Rourke Declaration, written there in 2009 and 2010. There was also a lot of evidence that was recovered from that computer, which included the fact that the registered owner's name was Vahan, which is an alternative spelling of the defendant's name, and we know that also because some of the sentencing letters that were addressed to the court called him Vahan with an H. The registered owner of that installed Windows in January 2008 before those numbers were written on there. Let's assume that they're linked to him. It seems like you have to show his intent to use them, and assuming that he could have recovered the numbers from the deleted files and everything that you're saying, how does that demonstrate that he intended to use those access devices? I'm not sure that the government has to prove that he intended to use them, but I think there's sufficient evidence to show that he possessed them with the intent to commit fraud, and that would be this. We know from evidence in the PSR and also from evidence that was submitted in the affidavits that the defendant in 2006 had been kidnapped. His kidnappers, according to the attorneys for the kidnappers, did so because they wanted to get money from him because they knew that he was involved in counterfeit access device fraud. When the kidnappers were arrested, recovered in the car were seven counterfeit access devices in the defendant's name, verifying the fact that at that time he was involved in access device fraud. During the investigation of the 2015 case, the government uncovered evidence that from as early as 2009, the defendant had been ordering from a company in Murrieta, California, skimmers and Bluetooth-enabled skimmers on a regular basis. Those Bluetooth skimmers are usually put on gas station pumps and other devices like ATMs, and what that allows people to do is over the course of a day, as people use their access devices, it records all that information, the credit card numbers, the names, sometimes the expiration dates, and then later during the evening, a person can go by and using a Bluetooth device, download all those access device numbers. So the evidence clearly shows that the defendant, long before the numbers in this case were written onto his computer, was involved in skimming, and he was doing that from 2006 until the time that he was arrested again in 2014. If we can talk about the sentence that was imposed here because there was a lot of confusion about what needed to happen with respect to the sentences because the judge was sentencing the defendant to the 2012 case and to the 2015 case. The 2015 case had the enhancement under 3147 that required a consecutive sentence. That's correct. But it seems like there was a lot of misapprehension about what that meant, including from the government. Do you still believe that those sentences from 2012 and 2015 had to be consecutive? I think that it wasn't plainly wrong for the district court to make them consecutive. But that's different. At the time, it appears from the transcripts and from all the evidence that you were arguing that they had to be consecutive. The prosecutor at the time said I'm not sure. Is that not you? No, I'm a different prosecutor. Okay, sorry. But do you agree? We share the same last name. Do you agree? I agree that the prosecutor at the time said, Your Honor, I am not sure. I think they have to run consecutive. You're more of an expert in this than I am, and offered that suggestion. That's interesting. That's interesting because, you know, as a judge and as a district court judge, usually you look to the lawyers in most situations to help you and guide you on these areas of the law. It's true the judges do develop, you know, a sense of what, you know, from their experience of what should happen, but this is unique. It doesn't seem like a lot of people here had a lot of experience with the 3147 enhancement, and that seems plain from the record. And I understand you might be arguing that it's not plainly erroneous, but at the time the judge was getting no help from the lawyers here. So what needed to happen, I think, and I want you to verify now that you, perhaps after looking at the record, is the following. It seems like those two sentences from the 2012 and the 2015 needed to be grouped, and they were not. Do you agree with that? I don't necessarily agree with that. Under the statute, under U.S.S.G.3C.1.3, first that says that merely a portion of the 2015 sentence attributable to 3147 must run consecutive. So within that 2015 sentence, a portion of that had to run consecutive to each other because he committed the offense while he was on release. But there's nothing in there that says that the 2015 and the 2012 had to be consecutive. Well, that's the government's point. There's nothing in the sentencing guidelines or the statute that says that they shouldn't run consecutive either. Well, I know, but that's very different because under 3147, which is an enhancement and there's consecutive language, people were under the understanding and the misunderstanding that the 2015 had to be consecutive to the 2012. Well, actually what the court did was the court offered alternative sentences in the case, and the court clearly wanted to reach the same number under both alternatives. When the government made the suggestion, the court said, here's what I'm going to do. I'm going to lower the sentence in the 2012 case to 48 months. It should have been 51 months. And then I'm going to run the other case consecutive to the 48 months. You know, under the way that the sentencing guidelines treat 3147, probably if the court had followed that by the letter of the law of the sentencing guidelines, the three additional levels should have run consecutive in this case. To the 2015? In the 2000, well, in the overall total offense level. And then that would have, it still would have led to the same result because the court clearly wanted to reach the 72 months in the case, and the court was just trying to figure out the right way to slice up those sentences. I took up a lot of time asking questions, so I don't know if any of my colleagues have any questions. Okay. Thank you. Honor has to the question about what the court determined. Right in the government's brief, it states at page 25 of the government's brief, that at the time of the sentencing the court followed the recommendation of the probation report, and it rejected the government's loss calculation and adopted the probation officer's calculation. It's also reported as transcript page 8, but it's right in the government's brief. So they rejected. The government was relying upon O'Rourke's declaration, by the way, which counsel misstated. The O'Rourke declaration in no way connected any of the numbers in the computer to any of the losses in this case. And you can look at O'Rourke's declaration. He does a generic declaration that said this is a possibility you can, presumably a thief if he wanted to, could use numbers to do this, that, or whatever in the future, but he never connected any of the numbers in this case to his declaration. And the court did not rely upon O'Rourke's declaration, and it's right in the reporter's transcript. All she did is look at the probation report. The probation took the 1,200 and some numbers, multiplied it by 500, and that's all the judge did. Now, the guidelines made clear in the changes in November of 2015 that you had to show it's the subjective intent of the perpetrator as to whether or not he intended to use those numbers. The only evidence in the record about those numbers was that they were put in the computer sometime in 2009, 2010, and they were deleted some year and a half before the defendant was arrested in 2012. That was the sum total of the evidence in this case. And those numbers were never connected to any bank, to any cardholder, or anything. So all we have in the record is the numbers were in the computer by someone, they were deleted by somebody, the defendant was arrested two years later, and that's it. And they just took this rote approach, we're going to multiply this 1,200 numbers by $500, and that's the end of the story. Thank you. I appreciate your arguments here today. The case of U.S. v. Dabazin is submitted. I appreciate the lawyers presenting their arguments.
judges: Schroeder, Murguia, Davis